UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.  3:13-1036-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| HORACE A. TAYLOR | ) | |
| _____ | ) | |

This matter is before the court on defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 126). The defendant first contends that the reason for immediate release is "illegal sentence and an [sic] issues need to be looking into my rightful involve." He also alleges "an 851 relevant conduct dismissed case an [sic] crack cocaine errors."

In his supplemental filing, the defendant appears to argue that the First Step Act reduced the mandatory minimum penalties for drug offenders such as him, and also that the Act changed the definition of prior convictions used to serve to enhance criminal penalties.

As the government points out in its responsive memorandum, the defendant has filed a motion for compassionate release and a supplemental brief raising additional issues. Nevertheless, the court will attempt to discern and rule upon the discreet issues raised by the defendant in his pleadings. The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is denied.

1

## STANDARD OF REVIEW

"A sentencing court may not, as a general matter, 'modify a term of imprisonment once it has been imposed.' " *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022) (quoting 18 U.S.C. § 3582(c)).  Compassionate release is an exception to this rule that permits the sentencing court to reduce a defendant's sentence "if it finds that ... extraordinary and compelling reasons warrant such a reduction" and the reduction aligns with "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable" as well as "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law.   Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the

federal inmate population, and maintain public safety.  The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so.  The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.  In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found

3

that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's

term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

## Exhaustion of Remedies

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government concedes that the defendant has exhausted his remedies with the BOP. Thus, this court will proceed to review the matters on the merits.

## PROCEDURAL HISTORY — THE OFFENSE CONDUCT

On December 3, 2013, the Grand Jury returned a six-count indictment against the defendant. Counts 1, 2, and 3 arose out of a traffic stop on April 2, 2012, in which the defendant was charged with possession with the intent to distribute a quantity of crack cocaine (21 U.S.C. § 841(a)), felon in possession (18 U.S.C. § 922(g)), and possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)). Counts 4, 5, and 6 arose out of the execution of a search warrant executed on September 26, 2013, and the

defendant was again charged with the same offenses as Counts1, 2, and 3. The two 18 U.S.C. § 924(c) counts accounted for a potential 30-year mandatory minimum sentence, regardless of the guideline range. On December 19, 2013, the Government filed an Information putting the defendant on notice that he was subject to increased penalties pursuant to 18 U.S.C. § 851 based upon a prior conviction. (ECF No. 19).

Defense counsel and the government negotiated an amended Plea Agreement (ECF No. 45) in which the defendant pled guilty to Count 1 (possession with intent to distribute a quantity of crack cocaine) and Count 6 (possession of a firearm in furtherance of a drug trafficking crime). Per Federal Rules of Criminal Procedure 11(c)(1)(C), the parties agreed that "the appropriate disposition of this case (irrespective of any fines and/or forfeiture) is a sentence of 170 months actual incarceration" as well as a term of supervised release not to at least 6 years (ECF No. 45).

The Presentence Report ("PSR") (ECF No. 60) prepared by the United States Probation Office calculated the otherwise applicable guideline range for this case. At defendant's sentencing, the PSR recommended that the statutory penalty on Count 1 was a maximum of 30 years and as to Count 6 there was a mandatory minimum of 5 years and a maximum of life, which had to run consecutive to the sentence on Count 1. The defendant's total offense level was determined to be 29, with a criminal history category of IV. This would have yielded a Guideline sentencing range of 121 to 151 months on Count 1, plus 60 months consecutive on Count 5. Thus, the defendant faced a Guideline sentencing range of

6

181 to 211 months incarceration.  At sentencing, however, this court imposed a sentence of 170 months pursuant to Rule 11(c)(1)(C).

On September 24, 2015, this court sentenced the defendant to a term of incarceration of 170 months consisting of 110 months on Count 1 and 60 months on Count 6, those terms to run consecutively.

The defendant did not file a direct appeal of his conviction or sentence.  He did file an unsuccessful motion to vacate his sentence pursuant to 28 U.S.C. § 2255.   He also filed a motion to reduce his sentence based on retroactive Guideline Amendment 782 which lowered the base offense level for crack cocaine.  The court found that because it imposed the defendant's sentence pursuant to Rule 11(c)(1)(C), he was not eligible for a reduction under Amendment 782. (ECF No. 86).   The defendant appealed this court's order which the Fourth Circuit affirmed (ECF No. 92).

On July 11, 2018, the defendant filed a second motion to reduce his sentence pursuant to Amendment 782 in light of *United States v. Hughes*, 138 S.Ct. 1765 (2018) which changed the analysis of whether Amendment 782 applied to Rule 11(c)(1)(C) pleas.  The court found that the defendant's Guidelines did not play a relevant part in its determination of the defendant's sentence and again denied the defendant's motion to reduce his sentence. (ECF No. 118).

On October 24, 2017, this court denied the defendant's § 2255 motion, finding that the defendant's claims of involuntary plea and coerced confession; the government's failure

to disclose evidence and alleged unconstitutional search of evidence; and ineffective assistance of counsel were without merit. (ECF No. 102).

On October 8, 2021, this court denied, without prejudice, the defendant's first motion (ECF No. 123) for compassionate release due to medical conditions because the defendant had not exhausted his administrative remedies. (ECF No. 124).

The second and present motion for compassionate release was filed by the defendant on March 27, 2023.

The defendant has received credit for time served since December 17, 2013. He is now approximately 33 years old. His anticipated release date from Allenwood Medium Federal Correctional Institution is scheduled for September 8, 2026.

DISCUSSION

1. *The Defendant's Medical Conditions*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility

8

that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

Although the defendant did not check the box on his form motion for "medical condition," in his supporting documents he asserts that "I have medical issues from where I was shot in the year 2007 in my spine, but including nerve damage, also there is a hole in my foot that is at risk of infections and in need of surgery."

To begin with, at the original guilty plea hearing in June 2014, the defendant's attorney relayed to this court that the defendant was shot in the shoulder in 2006, shot in his back in 2007, and stabbed in the stomach. Counsel noted that as a result, the defendant did not have feeling in his right leg and had an abscess at the bottom of his foot. The court was also informed that the defendant had his gallbladder removed and thus had trouble going to the bathroom.

It should thus be noted at the outset that many of the defendant's medical problems predated by several years his criminal involvement that led to his current sentence. Thus, to the extent that the defendant seeks compassionate release for medical conditions that existed

long before he committed the crime at issue, this court is somewhat less sympathetic than it would be had the medical conditions arisen post-sentencing.   A defendant may not obtain a "get out of jail free" card by incurring medical problems and then committing a crime.

Accordingly, the court will now proceed to determine whether the defendant's medical conditions that existed at the time of the sentencing have become more acute while incarcerated.   The government indicates that BOP medical records show that the defendant has received surgery to repair the ulceration in his foot and that he is receiving regular followup care.   Moreover, any complications appear to be self-induced as he has not complied with the physician's order not to bear weight on his leg and to keep the wound dry.

Additionally, the record indicates that the defendant is seeking clearance to return working at UNICOR, thus showing that he is capable of caring for himself.   The court finds no merit to the defendant's argument that his medical condition compels his immediate release at this time.   As the defendant cannot show that he is suffering from a severe medical condition, this court does not find an extraordinary and compelling reason for his early release.

## 2. *Other Legal Claims*

The defendant asserts various legal challenges to his case, including his claim that an illegal search and seizure was conducted; a challenge to this court's determination of relevant conduct at his original sentencing; an issue with the drug quantity calculation; and Guideline Amendment 782.   The defendant also argues that his criminal history was incorrectly

calculated.

In *United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022), the Fourth Circuit squarely held that a defendant's attempt to collaterally attack his convictions and sentence via a motion for compassionate release (under 28 U.S.C. § 3582(c)(1)(A)) ignores the established procedures for doing so—specifically, 28 U.S.C. § 2255 is the exclusive remedy for challenging a federal conviction or sentence after the conclusion of the period of appeal. Additionally, when a defendant pleads guilty to a crime, any pre-existing legal issues, such as search and seizure challenges, are waived.

As discussed earlier in this order, the defendant has already filed one § 2255 petition raising many of the same claims as he does here in his motion for compassionate release which this court denied on the merits (ECF No. 102). Thus, he cannot file a second or successive § 2255 without permission from the Fourth Circuit Court of Appeals. "[A] prisoner seeking to file a successive application in the district court must first obtain authorization from the appropriate court of appeals." *United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003) (citing 28 U.S.C. § 2244(b)(3)). "In the absence of pre-filing authorization, the district court lacks jurisdiction to consider an application containing abusive or repetitive claims." *Id.*

More over, to the extent the defendant challenges his Guideline calculation, it should be remembered that the defendant was sentenced to an agreed upon sentence pursuant to Rule 11(c)(1)(C).

11

### 3. *Intervening Changes in Sentencing Law*

It also appears that the defendant is attempting to argue that changes in the law occurring after his sentencing date should afford him compassionate release. It is true that the Fourth Circuit has held that changes in sentencing regimes which result in a notable disparity between the sentenced originally received and what a defendant would receive under the new standards can, in certain instances, serve as an extraordinary and compelling reason underlying a motion for compassionate release. *See United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020).

However, such an argument is not applicable here. The record in this case clearly shows that the defendant entered into a plea agreement pursuant to Rule 11(c)(1)(C) which allowed the parties to agree upon a sentence of 170 months. This agreement included the dismissal of several other criminal charges which allowed the defendant to agree upon a sentence much lower (less than half) than the minimum sentence he faced were he to be convicted on each count. Moreover, the 170-month sentence was less than the 181–211 months the defendant faced were he to have pleaded guilty to the same two charges absent an agreed upon sentence.

Accordingly, as discussed at defendant's sentencing hearing and in the order denying defendant's previous motion to reduce his sentence (ECF No. 118), the applicable sentencing Guidelines had virtually no effect on the sentence the defendant ultimately received. Thus, any subsequent changes in the law would leave defendant's agreed upon sentence

undisturbed. Accordingly, the defendant has failed to show any extraordinary and compelling reason justifying relief on this issue.

### 4. *Post Sentencing Conduct*

In its response in opposition, the government provides a copy of the defendant's inmate disciplinary record which includes incidents of being in an unauthorized area, refusing to obey an order, being insolent to a staff member, interfering with taking count, and using abusive/obscene language—these incidents occurred as recently as April 2023. Other disciplinary infractions include possessing an unauthorized item, instances of disruptive conduct, refusing to obey an order, engaging in sexual acts (multiple incidents), and possessing drugs/alcohol.

Aside from his numerous disciplinary infractions over the past several years, the defendant has managed to earn his GED while incarcerated and has taken more than 15 educational courses. Additionally, he has held various work details in food services and at UNICOR.

### CONCLUSION

For all the foregoing reasons, and after conducting an extensive and individualized review of the defendant's claims, the court respectfully denies the motion.

IT IS SO ORDERED.

*Joseph F. Anderson Jr*

August 14, 2023                                  Joseph F. Anderson, Jr.
Columbia, South Carolina                  United States District Judge